# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68369-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| JEFFREY T. HUYNH, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 12, 2013 |

GROSSE, J. — The analysis of whether the legislature intended a crime to have alternative means of commission focuses on the act that constitutes the offense. Here, the act that constitutes the offense of possession with intent to manufacture or deliver is possession. The "intent to manufacture or deliver" element deals with the defendant's subjective mental state and therefore does not constitute alternative means of committing the offense. Further, a defendant is not entitled to unanimity with regard to the statutory factors that make an offense a major violation of the Uniform Controlled Substances Act[1] (major VUCSA) because those factors are definitional, that is, they are different sets of facts that, if present, make the offense a major VUCSA. For these reasons, and because the trial court did not abuse its discretion in denying the motions to sever and because the issues appellant raises in his statement of additional grounds are either unreviewable or without merit, we affirm.

---

[1] Chapter 69.50 RCW.

## FACTS

In January 2011, Border Patrol Agent Seim DeLaCruz was working undercover as "a midlevel to ounce dealer to kilo level dealer" in cocaine. Agent DeLaCruz learned of a person named Jeff (later identified as appellant Jeffrey Huynh) who wanted to broker a deal for the purchase of kilograms of cocaine.

Agent DeLaCruz and Huynh met in February 2011 at a restaurant in Mount Vernon. Agent DeLaCruz brought two kilograms of cocaine to the meeting. Huynh arrived with another man who was to be the buyer; Huynh acted as broker. Huynh and Agent DeLaCruz got into the agent's car, where Huynh looked at and took pictures of the cocaine. The buyer decided he needed a few days to decide whether to buy the cocaine, and the purchase never occurred.

Agent DeLaCruz and Huynh had several more contacts between February and May 20, 2011. On May 20, Huynh telephoned Agent DeLaCruz and told the agent he was on his way to the Mount Vernon restaurant with a person who wanted to buy two kilograms of cocaine for $42,000. Huynh's broker's fee was to be $4,000. When Agent DeLaCruz arrived at the restaurant, Huynh and two other men (Raymond Mak and Jai Lin) were already there. Agent DeLaCruz and Huynh went outside at Huynh's request; Mak and Lin remained inside. Once outside, Huynh brought up the matter of his broker's fee and also told the agent that Mak and Lin were willing to purchase three to five kilograms every week or every other week. The agent promised Huynh a $2,000 broker's fee per transaction.

Agent DeLaCruz and Huynh went back inside the restaurant and joined Mak and Lin. They all went into the bathroom where Huynh showed the agent bundles of stacked $100 bills. The men then returned to the table and Mak said he wanted to see the cocaine. Agent DeLaCruz and Mak went outside and the agent opened the trunk and showed Mak the two kilograms of cocaine. The two men then returned to the restaurant.

The entire group then went back to the parking lot, where Mak grabbed the cocaine, Huynh gave Agent DeLaCruz the money, and the agent gave Huynh his broker's fee. Other undercover agents were stationed nearby. Huynh and Lin were arrested outside the restaurant; Mak had driven away and was arrested several blocks away. The cocaine was found in the trunk of Mak's car.

The State charged Huynh with possession of cocaine with intent to manufacture or deliver contrary to RCW 69.50.401 and conspiracy to possess cocaine with intent to manufacture or deliver contrary to RCW 69.50.401 and .407. The State provided notice of its intent to seek an exceptional sentence on the ground that the charged offenses were major VUCSAs related to trafficking in controlled substances.

Prior to trial, Huynh moved to sever the counts and the defendants. The court denied Huynh's motion. Mak and Huynh were tried together.

The "[t]o convict" instruction on the possession with intent to manufacture or deliver count against Huynh, instruction 12, provided as follows:

> To convict the defendant, JEFFREY T. HUYNH, of the crime of possession with intent to manufacture or deliver a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:

3

(1) That on or about May 20, 2011, the defendant, JEFFREY T. HUYNH, or an accomplice, possessed a controlled substance – Cocaine;

(2) That the defendant, JEFFREY T. HUYNH, or an accomplice, possessed the substance with the intent to manufacture or deliver a controlled substance – Cocaine;

and

(3) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Instruction 16 defined "[m]anufacture":

Manufacture means the direct or indirect production, preparation, compounding, conversion, or processing of any controlled substance.

Manufacture also means the packaging or repackaging of any controlled substance or labeling or relabeling of the controlled substance's container.

Instruction 17 defined "[d]eliver or delivery" as "the actual or constructive or attempted transfer of a controlled substance from one person to another."

The "[t]o convict" instruction on the conspiracy count, instruction 20, provided:

To convict the defendant, JEFFREY T. HUYNH, of the crime of conspiracy to commit possession with intent to manufacture or deliver a controlled substance, each of the following elements of the crime of conspiracy must be proved beyond a reasonable doubt:

4

(1) That on or about May 20, 2011, the defendant agreed with one or more persons other than the undercover agent, to engage in or cause the performance of conduct constituting the crime of possession with intent to manufacture or deliver a controlled substance;

(2) That the defendant made the agreement with the intent that such conduct be performed;

(3) That any one of the persons involved in the agreement took a substantial step in pursuance of the agreement; and

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Huynh's counsel joined in the objection raised by Mak's counsel as to the inclusion of the word "manufacture" in the instructions:

Regarding the inclusion of the word "manufacture" I think that should be excluded from the definition of the crime and the aggravated allegation. I don't think any evidence was brought forward to indicate that that alternative is being charged. Possession with intent to deliver has clearly been charged and the evidence being put forth. But the manufacturing as the alternative I think should be excluded under the facts of this case.

The court rejected the objection to the inclusion of the word "manufacture":

"The State's evidence was sufficient for the jury to find that there was an intent to cut or to dilute the strength of the cocaine and repackage it for sale for other individuals. So that will be included."

The jury found Huynh guilty of the crimes of possession and conspiracy to possess "[w]ith [i]ntent to [m]anufacture or [d]eliver" cocaine. In the special

5

verdict forms, the jury answered "yes" to the question, "Was the crime a major violation of the Uniform Controlled Substance Act?" Huynh appeals.

## ANALYSIS

### I. Alternative Means

"Criminal defendants have the right to a unanimous jury verdict. But unanimity is not required 'as to the means by which the crime was committed so long as substantial evidence supports each alternative means.'"[2] Huynh argues that his convictions must be reversed because substantial evidence does not support each alternative means of committing both the underlying offenses and the aggravating circumstances. His argument raises the threshold questions of whether possession with intent to manufacture or deliver is an alternative means crime and whether the statutory factors that may identify an offense as a major VUCSA are alternative means on which the jury must be unanimous.

### A. Underlying Offenses

"An 'alternative means crime' is one 'that provide[s] that the proscribed criminal conduct may be proved in a variety of ways.'"[3] The legislature has not defined "alternative means crimes," nor has it identified which crimes are alternative means crimes.[4] Whether the alternative means analysis applies is determined by the legislative intent in the statute.[5] Merely stating methods of

---

[2] State v. Peterson, __ Wn. App. __, 301 P.3d 1060, 1071 (2013) (footnotes and citations omitted).

[3] State v. Peterson, 168 Wn.2d 763, 769, 230 P.3d 588 (2010) (alteration in original) (quoting State v. Smith, 159 Wn.2d 778, 784, 154 P.3d 873 (2007)).

[4] Peterson, 168 Wn.2d at 769.

[5] State v. Arndt, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976).

committing a crime in the disjunctive does not, of itself, create alternative means of committing a crime.[6]

The statute under which Huynh was charged, RCW 69.50.401(1), provides: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

The analysis of whether the legislature intended a crime to have alternative means of commission focuses on the act that constitutes the offense. For example, State v. Peterson[7] reflects that this is the proper focus. In Peterson, the issue was whether failure to register as a sex offender, former RCW 9A.44.130 (2003), is an alternative means crime. That version of the statute made it a crime for a person to fail to register as a sex offender after (1) becoming homeless, (2) moving between fixed residences within a county, or (3) moving from one county to another. The statute set different deadlines within which a person had to register depending upon whether the person became homeless, moved between fixed residences within a county, or moved from one county to another. In determining whether the crime is an alternative means crime, the court compared the crime to theft, which the court held is an alternative means crime because it may be committed by "(1) wrongfully obtaining or exerting control over another's property *or* (2) obtaining control over

---

[6] State v. Laico, 97 Wn. App. 759, 762, 987 P.2d 638 (1999).
[7] 168 Wn.2d 763, 769, 230 P.3d 588 (2010).

another's property through color or aid of deception."[8] In concluding that, unlike

theft, failure to register is not an alternative means crime, the court stated:

> The alternative means available to accomplish theft describe *distinct acts* that amount to the same crime. That is, one can accomplish theft by wrongfully exerting control over someone's property or by deceiving someone to give up their property. In each alternative, the offender takes something that does not belong to him, but his *conduct* varies significantly. In contrast, the failure to register statute contemplates a *single act* that amounts to failure to register: the offender moves without alerting the appropriate authority. His conduct is the same—he either moves without notice or he does not. The fact that different deadlines may apply, depending on the offender's residential status, does not change the nature of the criminal act: moving without registering.[9]

The statute at issue here, RCW 69.50.401(1), describes three distinct acts

that amount to a violation of the statute: (1) manufacture, (2) delivery, and (3)

possession with intent to manufacture or deliver. These distinct acts constitute

three alternative means. But, the same cannot be said of possession with intent

to manufacture or deliver. The only physical act involved in "possess[ion] with

intent to manufacture or deliver" is the act of possession. The intent to

manufacture and the intent to deliver elements of the crime address the

defendant's subjective mental state. An element dealing with a defendant's

subjective mental state generally cannot be the subject of an alternative means

analysis. Possession with intent to manufacture or deliver is not an alternative

means crime. Accordingly, we need not and do not address whether substantial

---

[8] Peterson, 168 Wn.2d at 769 (citing State v. Lineham, 147 Wn.2d 638, 644-45, 647, 56 P.3d 542 (2002)).
[9] Peterson, 168 Wn.2d at 770.

8

evidence supports possession with intent to deliver as well as possession with intent to manufacture.[10]

B. Aggravating Circumstance

Huynh argues that his enhanced sentence must be vacated because the State did not present substantial evidence to prove each alternative means of committing a major VUCSA.

The presence of any of the six statutory factors may identify a current offense as a major VUCSA.[11] The jury was instructed that it must be unanimous that the aggravating circumstance was proved beyond a reasonable doubt. The instruction on a major VUCSA, instruction 27, provided:

> A major trafficking violation of the Uniform Controlled Substances Act is one which is more onerous than the typical offense. The presence of any of the following factors may identify the offense charged in Count 1 as a major trafficking violation:

---

[10] Huynh does not argue the evidence was insufficient to prove possession with intent to deliver.

[11] RCW 9.94A.535(3)(e). The factors are

> (i) The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so;
>
> (ii) The current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use;
>
> (iii) The current offense involved the manufacture of controlled substances for use by other parties;
>
> (iv) The circumstances of the current offense reveal the offender to have occupied a high position in the drug distribution hierarchy;
>
> (v) The current offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of disbursement; or
>
> (vi) The offender used his or her position or status to facilitate the commission of the current offense, including positions of trust, confidence or fiduciary responsibility (e.g., pharmacist, physician, or other medical professional).

Whether the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use;

Whether the circumstances of the offense reveal that the defendant occupied a high position in the drug distribution hierarchy; or

Whether the offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of distribution.

The jury was also instructed that in order to find the existence of the aggravating circumstance, the jury must "unanimously agree that the aggravating circumstance has been proved beyond a reasonable doubt." The "aggravating circumstance" on which the jury had to be unanimous was that the offenses were major VUCSAs. The jury was not instructed that it must be unanimous with regard to which of the three statutory factors made the offenses major VUCSAs.

Huynh argues that because the jury was not instructed on unanimity as to the statutory factors, the exceptional sentence can stand only if substantial evidence supports all three factors. And, he argues, substantial evidence does not support all three factors.

Under the alternative means analysis, definitional statutes do not create additional alternative means of committing an offense.[12] For example, in State v. Laico,[13] the court determined that the definition of "great bodily harm" for first degree assault did not create three alternative means for committing the offense. Accordingly, jury unanimity with regard to the existence of great bodily harm did

---

[12] Linehan, 147 Wn.2d at 646.
[13] 97 Wn. App. 759, 987 P.2d 638 (1999).

10

not require unanimity as to the type of great bodily harm. Similarly, the statutory factors that may identify an offense as a major VUCSA are different sets of facts that, if present, make the offense a major VUCSA. Accordingly, jury unanimity with regard to the presence of the aggravating circumstance of major VUCSA does not require unanimity as to which set of facts makes the offense a major VUCSA.

## II. Motion to Sever

At several points during trial, Huynh moved to sever the counts against him and to sever his trial from Mak's trial. The trial court denied the motions.

The law does not favor separate trials. We review a trial court's denial of a motion to sever for manifest abuse of discretion.[14] To show that the trial court abused its discretion in denying severance, "the defendant must be able to point to specific prejudice."[15]

### A. Severance of the Offenses

CrR 4.4(b) provides:

> The court, on application of the prosecuting attorney, or on application of the defendant other than under section (a), shall grant a severance of offenses whenever before trial or during trial with the consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.

A defendant seeking severance has the burden of demonstrating that a trial involving all counts would be so manifestly prejudicial as to outweigh the

---

[14] State v. Medina, 112 Wn. App. 40, 52, 48 P.3d 1005 (2002).
[15] State v. Bythrow, 114 Wn.2d 713, 720, 790 P.2d 154 (1990).

concern for judicial economy.[16] Joinder of offenses carries the potential for prejudice if (1) the defendant may have to present separate, possibly conflicting, defenses; (2) the jury may infer guilt on one charge from evidence of another charge; or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge.[17]

Huynh argues he was entitled to severance of the possession with intent to manufacture or deliver count from the conspiracy to possess with intent to manufacture or deliver count because one count alleged that Huynh acted as Mak's accomplice and the other count alleged that he was responsible for his own conduct. These different theories of liability, Huynh argues, likely confused the jury and made it difficult for the jury to compartmentalize the evidence. But, as the trial court stated in denying Huynh's motion to sever the offenses, "It does appear all of the allegations relate to the same events or course of events and, therefore, would be cross admissible against one another." Huynh's brief argument citing allegedly very different theories of liability is not sufficient to meet his burden of showing that joinder of the offenses was so prejudicial that it outweighed the need for judicial economy.

B.    Severance of the Defendants

Although he argued several grounds for severance below,[18] on appeal, Huynh argues only that he was entitled to severance because the State

---

[16] Bythrow, 114 Wn.2d at 718.

[17] Bythrow, 114 Wn.2d at 718.

[18] Huynh argued that Mak's statement against him was inadmissible. But the court redacted all references to Huynh in Mak's statement. He also argued that

presented no evidence that he intended to manufacture cocaine and therefore the testimony about repackaging and diluting cocaine would not have been admissible against him.

CrR 4.4(c)(2) provides that the court, on application of the prosecuting attorney or the defendant, should grant a severance of defendants:

> (i) if before trial, . . . it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or
> (ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

As with the severance of offenses, a defendant arguing for severance of defendants must be able to point to specific prejudice resulting from the denial of the motion to sever.[19]   Huynh's entire argument is that the evidence about repackaging and diluting the cocaine would not have been admissible against him.  This does not show the requisite specific prejudice.

The trial court did not abuse its discretion in denying Huynh's motions to sever.

III.    Statement of Additional Grounds (SAG)

A.    Informant's Tip

Huynh argues that evidence flowing from the informant's tip should have been excluded on the ground that the informant was unreliable and that the information was obtained in violation of the privacy act, chapter 9.73 RCW. However, it is not clear from Huynh's SAG or the record what this issue is about.

---

the defenses were mutually antagonistic, but does not raise this argument on appeal.
[19] State v. Emery, 174 Wn.2d 741, 752, 278 P.3d 653 (2012).

Nor can we ascertain what informant or what tip Huynh is referring to. Huynh does not cite to the record in support of his argument. The issue is not reviewable. See RAP 10.10(c).

B.    Opportunity to Testify

Huynh argues he was denied due process because his counsel denied him the opportunity to testify.

At trial, Huynh's counsel stated:

> [DEFENSE COUNSEL]: Your Honor, I have discussed the issue with Mr. Huynh, and I have advised him he does not have to take the witness stand. His constitutional rights - -
>
> [PROSECUTOR]: Objection, Your Honor, speaking.
>
> [DEFENSE COUNSEL]: And he has chosen to do that.

Because Huynh himself chose not to testify, he cannot claim a denial of due process because he did not testify.

C.    Closing Argument

Huynh's argument in his SAG as to this issue is unintelligible. We are unable to review it. See RAP 10.10(c). Further, to the extent Huynh claims his counsel did not present a closing argument, Huynh is incorrect.

D.    Entrapment Instruction

Huynh did not request an instruction on entrapment. Accordingly, he cannot claim error in the trial court's failure to give such instruction.[20]

---

[20] See State v. Scott, 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (the failure to request an instruction, or to challenge the trial court's failure to give a requested instruction, waives the issue on appeal).

Affirmed.

WE CONCUR: