# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | ) | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71215-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON LEE HANSEN, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: July 27, 2015 |
| | ) | |

Cox, J. – To show ineffective assistance of counsel based on the failure to raise a motion to sever, the defendant must establish that the court likely would have granted the motion.[1] Here, Brandon Hansen's counsel failed to renew a motion to sever Hansen's charges at the close of the evidence following the court's earlier denial of the same motion. Because Hansen cannot show that the court likely would have granted the renewed motion, his ineffective assistance of counsel claim fails. We affirm.

The State charged Hansen with several domestic violence offenses. They included Assault in the Second Degree—Domestic Violence. The State also charged Hansen with seven counts of domestic violence felony violation of a court order. All eight counts allegedly involved L.H.

The State initially brought only the assault charge against Hansen. As part of the assault case, the State sought an order prohibiting Hansen from

---

[1] State v. Sutherby, 165 Wn.2d 870, 884, 204 P.3d 916 (2009).

contacting L.H. The court granted the no-contact order. While in jail, Hansen allegedly violated this order, leading to the additional charges.

Before trial, Hansen moved to sever the assault charge from the violation of a no-contact order charges. The trial court denied the motion. Hansen's counsel did not renew the motion to sever the charges at the close of evidence.

The jury found Hansen guilty of all charged counts.

After trial, Hansen's counsel withdrew, stating that she believed she had provided ineffective assistance of counsel.

Hansen appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Hansen argues that he received ineffective assistance of counsel. Specifically, he argues that his counsel's performance was constitutionally deficient because she failed to renew the motion to sever the charges against him at the close of the evidence. We disagree.

The right to counsel includes the right to effective assistance of counsel.[2] An ineffective assistance of counsel claim has two components.[3] If a defendant cannot demonstrate both components, the claim fails.[4]

---

[2] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[3] Strickland, 466 U.S. at 687.

[4] Id. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

First, the defendant must show that counsel's performance was deficient.[5] This requires showing that counsel's performance fell below "an objective standard of reasonableness."[6] Washington courts are "highly deferential to counsel's performance."[7] Courts presume that counsel provided effective representation and require the defendant to prove that no "legitimate strategic or tactical reasons" exist.[8]

Second, the defendant must show that the deficient performance prejudiced the defense.[9] Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[10] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[11]

If the allegedly ineffective assistance is based on counsel's failure to move to sever, the defendant must demonstrate two things to establish prejudice.[12] First, the defendant must show that the trial court likely would have granted a

---

[5] Strickland, 466 U.S. at 687.

[6] Id. at 688.

[7] In re Pers. Restraint of Gomez, 180 Wn.2d 337, 348, 325 P.3d 142 (2014).

[8] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

[9] Strickland, 466 U.S. at 687.

[10] Id. at 694.

[11] Id.

[12] Sutherby, 165 Wn.2d at 884.

motion to sever.[13] Second, the defendant must show that it is reasonably probable that the jury would not have found him guilty, if the court had granted the motion.[14]

CrR 4.4 governs motions to sever. When deciding a motion to sever charges, trial courts weigh potential prejudice against judicial economy.[15] "The law does not favor separate trials."[16] The defendant has the burden to show "that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy."[17] In order to be entitled to severance, "[T]he defendant must be able to point to specific prejudice."[18]

Courts weigh four factors when determining whether prejudice requires granting a motion to sever: "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial."[19]

---

[13] Id.

[14] Id.

[15] State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

[16] State v. Huynh, 175 Wn. App. 896, 908, 307 P.3d 788, review denied, 179 Wn.2d 1007 (2013).

[17] State v. Bythrow, 114 Wn.2d 713, 718, 790 P.2d 154 (1990).

[18] Id. at 720.

[19] Sutherby, 165 Wn.2d at 884-85 (quoting Russell, 125 Wn.2d at 63).

Other factors that can warrant severance are: "if (1) the defendant may have to present separate, possibly conflicting, defenses; (2) the jury may infer guilt on one charge from evidence of another charge; or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge."[20]

This court reviews de novo a claim of ineffective assistance of counsel.[21]

Here, Hansen does not argue that denial of the original motion to sever was erroneous. The question is whether the failure to renew the motion shows his counsel's performance was deficient.

Balancing the factors indicates that the court would have denied the renewed motion to sever. Thus, Hansen cannot show prejudice.

The State presented strong evidence for each count during trial. At trial, Officer Nona Zilbauer testified that she responded to a 911 hang-up call. She recognized the voice on the call as L.H.'s. Officer Zilbauer drove to the area from which the call was made and saw a woman she recognized as L.H. Officer Zilbauer saw L.H. "crying hysterically, [and] holding her face, or the side of her head, in pain." When Officer Zilbauer asked what happened, L.H. responded, "My boyfriend Brandon beat the s[**]t out of me." Officer Zilbauer then asked if it was Brandon Hansen, and L.H. responded affirmatively. Officer Zilbauer observed that L.H. "appeared terrified." L.H. told Officer Zilbauer that Hansen had hit her with a closed fist and squeezed her neck with his hands.

---

[20] Huynh, 175 Wn. App. at 908-09.

[21] Gomez, 180 Wn.2d at 347.

The paramedics who transported L.H. to the hospital also testified. One paramedic testified that while she was with L.H., L.H. kept repeating, "He beat the f[**]k out of me." L.H. also stated that she had been choked. Later, the paramedic overheard L.H. tell a nurse that her boyfriend had choked her. Similarly, another paramedic testified that L.H. stated "[h]e beat the f[**]k out of me" and "he choked me" without specifying whom she was referring to. Thus, strong evidence supported the assault charge.

The State also presented strong evidence for the no-contact order violations. During Officer Zilbauer's testimony, the State played several recorded telephone calls for the jury. The calls had been made from King County Jail, using Hansen's phone PIN. Officer Zilbauer identified the speakers on the calls as Hansen and L.H.

Although the female speaker did not identify herself as L.H., the content of the calls was consistent with Hansen and L.H.'s relationship. Additionally, an officer at King County Jail testified that the location of the phone calls correlated with Hansen's location in the jail.

Thus, strong evidence supported all charges. Accordingly, there was no danger that "cumulative evidence [would] lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge."[22]

Hansen's defenses for the different counts also did not require severance—the defenses for the different crimes were clearly distinct. Hansen's defense for the assault charge was identity. Hansen argued that he had not

---

[22] Huynh, 175 Wn. App. at 908-09.

been the person who assaulted L.H. Hansen's defense to the no-contact order violation charges was that he had not been speaking to L.H., but rather to someone else. When the defendant's defenses to multiple counts is denial, "[t]he likelihood that joinder will cause a jury to be confused as to the accused's defenses is very small."[23] Thus, there was no danger that the jury would confuse the defenses to the different charges. And Hansen's defenses did not conflict with each other.

The court instructions also supported trying the charges together. The court instructed the jury to consider the evidence for the different counts separately. The court instructed the jury to consider the phone calls only for the violation of a no-contact order. It also specifically instructed the jury not to use the evidence of the phone calls when considering the assault charge. We presume the jury followed these instructions.

Although the evidence for the different charged crimes was not cross-admissible, this factor by itself is insufficient to entitle Hansen to severance. In its pretrial ruling, the court noted that whether the evidence would be cross-admissible was "not entirely clear." But it appears that the court ultimately found that the evidence of the calls was not admissible for the assault charge, as it instructed the jury to consider the recordings only for the no-contact order charges. However, this single factor does not establish that the court would have severed the charges if Hansen's counsel had renewed her motion.

---

[23] Russell, 125 Wn.2d at 64.

7

Thus, Hansen cannot show that the court would have granted a renewed motion to sever the charges. Accordingly, Hansen cannot show that the failure to renew the motion prejudiced him.

Further, Hansen cannot show a reasonable probability that the jury would have found him not guilty on any one of the charges. As discussed previously, the State had strong evidence of both the assault charge and the violations of a no-contact order charges.

Hansen argues that the trial court would have likely granted a motion to sever. But his arguments are unpersuasive.

First, Hansen argues that the evidence on the no-contact order violations was weak. Hansen cites four pieces of evidence to support this contention: that no eyewitnesses saw Hansen call L.H.; the person on the phone with Hansen did not identify herself as L.H.; only Officer Zilbauer identified the voices on the call; and while the calls were made with Hansen's PIN, inmates routinely traded their phone PINs. These objections are not persuasive.

For example, Hansen does not cite any authority indicating that an eyewitness to the call is necessary for a conviction. Moreover, although the person on the phone did not identify herself as L.H., several statements she made indicated that she was L.H. Finally, although Hansen could have provided his PIN to another inmate, the calls began with the caller identifying himself as "Brandon," and Officer Zilbauer testified that she recognized his voice. The jury was the judge of the credibility of Officer Zilbauer's testimony as to the identity of the voice on the call.

Hansen also argues that the evidence was not cross-admissible. Assuming Hansen is correct, this is not dispositive. Our supreme court has held that even in cases where evidence is not cross-admissible, the "proposition that severance is required in every case is erroneous."[24]

Hansen also argues that the jury was likely unable to compartmentalize the evidence of the two counts. To support this proposition, Hansen contrasts his case with State v. Bythrow[25] for this proposition. But Hansen's argument is unpersuasive.

In that case, the supreme court held that there was no danger of prejudice because the trial was short, the State presented the evidence for the different counts sequentially, different witnesses testified for each count, and the defenses for each count were different.[26]

Hansen argues that most of those factors were not present in his case, thus severance was necessary. But Bythrow involved two charges of armed robbery.[27] Because the crimes were similar, there was "a greater danger of prejudice."[28] Here, the alleged assault was not similar to the charged violations of the no-contact order. Thus, there was no danger that the jury would confuse evidence of one count as evidence of the other. Accordingly, the fact that the

---

[24] Bythrow, 114 Wn.2d at 720.

[25] 114 Wn.2d 713, 790 P.2d 154 (1990).

[26] Id. at 723.

[27] Id.

[28] Id.

case was not presented sequentially, and that the witnesses overlapped, did not likely confuse the jury.

Finally, Hansen argues that trying his charges together allowed the jury to infer that he "had a criminal disposition." But this concern is present in all cases where multiple counts are tried together. Yet, "The law does not favor separate trials."[29] And it is the defendant's burden to show specific prejudice.[30] Here, Hansen fails to show specific prejudice.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

Trickey, J

---

[29] Huynh, 175 Wn. App. at 908.

[30] Bythrow, 114 Wn.2d at 720.