IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38999-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY W. TORREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Timothy Torrez appeals from his convictions of possession of a

controlled substance with intent to deliver and conspiracy to possess a controlled

substance with intent to deliver. On appeal, Torrez raises four issues: (1) the trial court

abused its discretion in denying his motion to suppress evidence obtained pursuant to the

amended search warrant, (2) the trial court abused its discretion in denying his motion to

suppress statements made to law enforcement, (3) the trial court abused its discretion in

denying his motion to sever his trial from that of his co-defendant, Roberta Jones, and (4)

there was insufficient evidence to convict Torrez of possession of a controlled substance

with intent to deliver and conspiracy to possess a controlled substance with intent to

deliver. We disagree and affirm his convictions.

BACKGROUND

Following a tip from a confidential informant that Roberta Jones was selling

methamphetamine, law enforcement initiated an investigation into Jones that involved

two controlled buys. Law enforcement subsequently obtained a search warrant for Jones'

residence. The warrant was later amended to include Jones' vehicle, which was driven

away from Jones' residence by Timothy Torrez just prior to the execution of the warrant

on the residence.

Law enforcement found methamphetamine during the searches of the residence

and the vehicle, along with other drug paraphernalia in the residence. The State charged

both Jones and Torrez with possession of a controlled substance with intent to deliver and

conspiracy to possess a controlled substance with intent to deliver.

1. SEARCH WARRANT

In his search warrant affidavit, Detective Bryson Aase stated that Jones and Torrez

were in a romantic relationship and were both known for trafficking large amounts of

methamphetamine. Detective Aase also noted that both subjects had been involved in

past narcotics cases.

The affidavit also explained that a confidential informant (CI) had been speaking

with law enforcement about purchasing methamphetamine from Jones and informed law

2

enforcement that they had recently learned that Jones and Torrez were traveling to the

Pasco area twice a week to pick up over a pound of methamphetamine to distribute in

Clarkston and Lewiston.[1]  The CI told law enforcement they had purchased

methamphetamine from Jones on multiple previous occasions.  They further said that

Jones kept two to four ounces of methamphetamine at her residence but kept larger

amounts at Torrez's parents' property.  The CI had assisted law enforcement in several

cases over the past year, each time providing reliable and credible information and

keeping in contact with law enforcement as directed.

The affidavit then detailed how the CI had participated in two separate controlled

buys during which the CI had successfully purchased methamphetamine from Jones.  The

CI met Jones at a predetermined location during the first controlled buy.  Jones arrived in

a black SUV[2] that did not have permanent license plates.  The second controlled buy

occurred in Jones' residence.  There is no evidence that Torrez was present during either

of the controlled buys.

About 21 days after the first controlled buy, police learned from the CI that Jones

had run out of methamphetamine and was traveling out of town to get more.  The CI said

---

[1] Although it appears from the affidavit that two CIs provided information to law enforcement, during pretrial proceedings Detective Aase testified, and the trial court found that there was in fact only one CI. Detective Aase explained that he used two different numbers to refer to the same CI to protect the CI's identity.

[2] Sport utility vehicle.

they had been in contact with Jones and Jones had said she "was almost back in town and would have methamphetamine to sell." Clerk's Papers (CP) at 34.

That same day, Detective Aase drove to Jones' residence and observed her black SUV, the same vehicle used during the first controlled buy, in a carport with wet tire tracks leading into the carport. Based on this information and the information received from the CI, Detective Aase believed that Jones had just returned from acquiring methamphetamine. Law enforcement surveilled her residence while Detective Aase requested a search warrant for the residence and Jones' person, supporting his request with an affidavit that contained all the above information. Detective Aase did not request a warrant for the black SUV parked in the carport at this time.

The magistrate granted the request for a warrant to search Jones' residence.

2. SEARCH OF SUV AND TORREZ

Prior to officers commencing the search of Jones' residence, Torrez left the residence driving the black SUV.

Detective Aase then called the magistrate and requested to amend the search warrant to include the black SUV and Torrez's person. Detective Aase relayed to the magistrate that the vehicle had left the apartment with Torrez as the sole occupant and expressed concern that Torrez may have removed evidence from the residence that was either now on his person or in the vehicle. The magistrate authorized the amendment, expanding the scope of the warrant to search the black SUV and Torrez's person.

4

While waiting for the magistrate to authorize the amendment, law enforcement stopped the vehicle and detained Torrez. Torrez was informed that the reason for the stop was possible narcotics related activity and was asked to step out of the vehicle. An officer then attempted to conduct a pat down search of Torrez, but Torrez immediately started taking things out of his own pockets. When Detective Aase arrived at the scene, Torrez was sitting in the back of a patrol car with the door ajar but was not handcuffed.

After arriving, Detective Aase spoke with Detective Cody Bloomsburg, and Detective Bloomsburg said he had read Torrez his *Miranda*[3] rights. Detective Aase then went over to Torrez, identified himself as a law enforcement officer, and asked Torrez if he remembered and understood his *Miranda* rights being read. Torrez stated that he did. Detective Aase informed Torrez that they had a warrant for the vehicle, his person, and the residence, and that they had located a quarter pound of methamphetamine at the residence. Detective Aase then asked Torrez if there was any methamphetamine in the SUV. Torrez responded there was some for personal use in the backseat. The entire conversation between Detective Aase and Torrez lasted about three minutes. Detective Aase was wearing plain clothes when he spoke with Torrez, and his gun was not visible.

Detective Aase subsequently located about a quarter pound of methamphetamine in the back seat of the SUV. Police then placed Torrez under arrest and searched his person, finding about $5,000 in cash.

### 3. PRETRIAL MOTIONS TO SUPPRESS

Prior to trial, defense counsel moved to suppress all evidence obtained pursuant to the search warrant, maintaining that the amendment was not supported by facts sufficient to show probable cause. Defense counsel argued that Detective Aase failed to explain why there was probable cause to search the SUV and that there was nothing that established a reason to search Torrez. He argued that Detective Aase merely expressed his personal opinion without supporting it with direct observation or factual basis and provided no facts connecting Torrez to any crime.

Although he did not bring up the issue in the initial motion or during argument, in his reply brief, defense counsel also argued that there was no basis of knowledge for the CI's statement that "Jones and/or Torrez [had been] traveling" to pick up methamphetamine twice a week and distributing it.

The trial court denied the motion to suppress, finding sufficient facts to show a nexus between the vehicle and the alleged criminal activity. Because of the nexus, the trial court determined that probable cause existed for the magistrate to amend the search warrant to include the vehicle and the driver of the vehicle, Torrez. Although it recounted the CI's statements to law enforcement in its decision, the trial court made no findings related to the search of Torrez's person or the CI's basis of knowledge.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Defense counsel also moved to suppress statements Torrez had made to Detective Aase regarding the personal methamphetamine in the SUV. Defense counsel argued that Torrez was subject to custodial arrest when he made the statements and that Detective Aase failed to give Torrez his *Miranda* warnings.

At the hearing on the motion to suppress, Detective Aase testified that Torrez was not free to leave at the time he had been questioned and multiple law enforcement officers were on the scene where Torrez was detained, some in marked police vehicles and wearing uniforms. All of the law enforcement officers present were carrying firearms.

Detective Bloomsburg testified that Torrez had been sitting in the backseat of the patrol car because it was cold outside. Detective Bloomsburg said that he did not specifically remember advising Torrez of his *Miranda* rights but that he would not have said he had done so unless he had. Detective Bloomsburg also said he routinely advised individuals of their rights in felony narcotics investigations, regardless of whether he intended to question them.

The trial court found that the environment was not coercive, and therefore, Torrez was not in custody. Further, the trial court determined that even if Torrez was in custody, he had been advised of his *Miranda* rights. Accordingly, the trial court denied Torrez's motion to suppress statements made to Detective Aase.

7

4.  MOTIONS FOR JOINDER AND SEVERANCE

The parties initially stipulated to severance of Jones and Torrez's cases because

Jones had agreed to cooperate with the State.  Accordingly, the trial court ordered

severance.  However, Jones subsequently decided not to cooperate, and the State moved

to reconsolidate the cases.  Torrez opposed consolidation, and his defense counsel argued

that joinder was improper because much of the investigation centered around Jones:

> The entire focus of the investigation was on Ms. Jones.  They were
> developing facts on Ms. Jones.  [Torrez] got drawn into it because he was
> driving the vehicle that was stopped and he is—he is linked to the—the
> drugs that were found in that vehicle.  But there is no other evidence in the
> police report indicating that he had anything to do with what was in the
> house.

Rep. of Proc. (RP) at 56.  The trial court granted the motion to consolidate, determining

that consolidation did not prejudice either side and judicial economy supported

consolidation because it resulted in one trial rather than two.

During the State's opening statement, defense counsel learned that the State

intended to present evidence of the controlled buys at trial as circumstantial evidence of

intent to deliver.[4]  Based on this comment, defense counsel renewed its motion to sever

the trials of Jones and Torrez.  The State opposed the motion, arguing that even if Jones

was the one who had "handed [ ] over" the methamphetamine, there was reason to

---

[4] Although opening statements were not transcribed, this fact can generally be
inferred from defense counsel's statements.

believe that Torrez was either involved or assented to the transactions. Moreover, the State argued that the evidence was probative with regard to both Jones and Torrez because Torrez was stopped after he left the apartment with a quarter pound of methamphetamine. In a brief decision, the trial court denied the motion to sever "[d]ue to the nature of the conspiracy charge." RP at 371.

### 5. TESTIMONY AT TRIAL

More than three years after the search of the residence and the SUV, the case proceeded to a jury trial. The State presented testimony regarding three controlled buys, two of which were referred to in the search warrant affidavit, during which a confidential informant purchased methamphetamine from Jones. The third controlled buy also occurred at the residence. From the record, it does not appear that Torrez had been present during any of the controlled buys.

Detective Aase testified that Torrez admitted that he had personal amounts of methamphetamine in the SUV. Detective Aase also testified that after finding the methamphetamine in the SUV, Torrez was then placed under arrest and searched incident to arrest. During the search incident to arrest, law enforcement found cash in Torrez's pocket that was bundled in one hundred dollar increments, which Detective Aase testified was a common way of bundling money for those who sell narcotics. About $2,600 was also located in Torrez's wallet.

9

Testimony at trial showed that when law enforcement searched the residence, they found about another quarter pound of methamphetamine in plain view behind a recliner in the living room. They also located three scales and a significant number of small "baggies" in the kitchen.

Torrez and Jones were in a long-term romantic relationship, and evidence discovered during the search indicated that Torrez, as well as Jones, had been living at the residence. Two sets of luggage, appearing to be "[h]is and hers," were found in the kitchen. Mail to Torrez, addressed to the residence, was also located. The residence contained two bedrooms. One contained two scales—one with residual meth, several men's clothing items hanging in the closet, a package of men's underwear, a men's cowboy hat, and two bowling balls under the bed. The other bedroom contained purses, jewelry, female clothing, and female shoes.

6. JURY INSTRUCTIONS, CLOSING ARGUMENT, AND VERDICT

The trial court instructed the jury regarding what constituted "possession:"

> Possession means having a substance in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance.
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
> In deciding whether the Defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case.

10

> Factors that you may consider, among others, include whether the
> Defendant had the immediate ability to take actual possession of the
> substance, whether the Defendant had the capacity to exclude others from
> possession of the substance, and whether the Defendant had dominion and
> control over the premises where the substance was located. No single one
> of these factors necessarily controls your decision.

CP at 189. The trial court also instructed the jury that, to convict Torrez of conspiracy to commit possession of a controlled substance with intent to deliver, it had to find, among other elements, that "the Defendant agreed with one or more persons to engage in or cause the performance of conduct constituting the crime of Possession with Intent to Deliver a Controlled Substance" and that "any one of the persons involved in the agreement took a substantial step in pursuance of the agreement." CP at 194. "A substantial step is conduct of the defendant that strongly indicates a criminal purpose." CP at 195.

Neither Jones nor Torrez provided any jury instructions for affirmative defenses. And in both parties' closing arguments, their defense counsel attacked the State's evidence generally, asserting that it was insufficient to convict and that there were flaws in law enforcement's procedures.

The jury found Torrez guilty of possession of a controlled substance with intent to deliver and conspiracy to commit possession of a controlled substance with intent to deliver.

Torrez appeals.

11

## ANALYSIS

1. WHETHER THE AMENDED WARRANT ESTABLISHED PROBABLE CAUSE TO SEARCH TORREZ AND THE SUV.

Detective Aase obtained an amended search warrant for both the black SUV and the driver, Torrez. At the suppression motion, the parties focused on whether there was probable cause to search the vehicle. At trial, Detective Aase testified that Torrez was searched incident to arrest, not pursuant to the warrant. On appeal, Torrez's argument focuses on whether the initial and amended search warrant application provided probable cause to search his person.

We hold that the magistrate did not abuse its discretion in finding probable cause to search the SUV. In addition, regardless of whether the warrant application provided probable cause to search Torrez, the search of his person incident to arrest provides an independent basis for the search of his person.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, the issuance of a search warrant requires a showing of probable cause. *Fry*, 168 Wn.2d at 5. Probable cause is a fact-specific determination that requires considerations of the competing interest of enforcement of the law and protection of an individual's privacy rights. *Id.* at 6. "'Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity

can be found at the place to be searched.'" *Id*. (quoting *State v. Maddox*, 152 Wn.2d

499, 505, 98 P.3d 1199 (2004)). "Probable cause requires a probability of criminal

activity, not a prima facie showing of criminal activity." *Maddox*, 152 Wn.2d at 510.

The affidavit supporting a search warrant must provide facts that establish a "nexus"

between the criminal activity, the place to be searched, and the evidence being sought.

*State v. Denham*, 197 Wn.2d 759, 767, 489 P.3d 1138 (2021).

Probable cause to believe that evidence of a crime can be found in a vehicle is

separate from probable cause to search the vehicle's occupants. "A premises warrant

does not confer authority upon an officer to search the individuals found at the premises."

*State v. Hill*, 123 Wn.2d 641, 643-44, 870 P.2d 313 (1994). Circumstances can exist

where police have probable cause to search property that is owned or possessed by a

person even when they do not have probable cause that the possessor is involved in a

crime. *See State v. Campbell*, 166 Wn. App. 464, 474, 272 P.3d 859 (2011). To search

both the vehicle and its occupants, the warrant application must provide probable cause to

believe that evidence of a crime will be found in the vehicle and on the person. In this

case, the warrant authorized police to search Torrez as well as the vehicle.

A trial court's conclusions of law are reviewed de novo. *State v. Fry*, 168 Wn.2d

1, 5, 228 P.3d 1 (2010). Unchallenged findings of fact are considered verities on appeal.

*State v. Brockob*, 159 Wn.2d 311, 343, 150 P.3d 59 (2006). A trial court's findings of

fact to which an appellant assigns error is reviewed for substantial evidence. *Id*.

"Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *State v. Pratt*, 11 Wn. App. 2d 450, 457, 454 P.3d 875 (2019).

The magistrate's determination of probable cause is given great deference. *State v. Kennedy*, 72 Wn. App. 244, 248, 864 P.2d 410 (1993) (internal citations omitted). This court's review of a probable cause determination is limited to the four corners of the document supporting probable cause. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Affidavits in support of search warrants should be evaluated in a commonsense manner. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012).

*A. Search of SUV*

Although his argument is not well developed, Torrez appears to argue that the amended warrant did not establish probable cause to search the SUV because nothing in the original application or the amendment would lead a reasonable person to believe that Torrez was involved in the methamphetamine operation. But the request for an amended warrant, when viewed in conjunction with the affidavit supporting the original request, provides a sufficient basis for probable cause.

The original and supplemental search warrant affidavits provided probable cause to believe that the SUV was being used in the commission of a crime and contained evidence of a crime. The original affidavit explained that during one of the controlled buys, Jones drove to the location in a black SUV that did not have permanent plates. Twenty-one days after this controlled buy, the CI informed law enforcement that Jones

14

had said she had left to get more methamphetamine and "was almost back to town." CP at 34. Detective Aase then drove to Jones' residence and observed the same black SUV parked in the carport with wet tire tracks leading into the carport. Shortly thereafter, Torrez drove the black SUV away from the residence. The probable cause to search the SUV applied regardless of who was driving the vehicle. Thus, the trial court did not abuse its discretion in denying Torrez's motion to suppress evidence obtained pursuant to the amended search warrant.

### B. Search of Torrez's Person

Following the search of the SUV, law enforcement arrested and searched Torrez's person and found about $5,000 in cash, half of which was arranged in a manner typical for individuals who sell narcotics. On appeal, Torrez argues that the warrant affidavit failed to establish probable cause to search his person and any reliance on the CI is misplaced because the warrant affidavit failed to establish the CI's basis of knowledge.

Arguably, this argument has not been preserved. In his motion before the superior court, Torrez focused on the evidence to support the search of the SUV rather than his person. In addition, he did not challenge the basis of the CI's knowledge until his reply brief. Neither party addressed the CI's basis of knowledge at oral argument before the trial court, the trial court did not enter any findings of fact regarding the CI's basis of knowledge, and Torrez did not object to the trial court's decision not to address the CI's basis of knowledge.

15

Regardless, according to testimony at trial, Torrez was searched incident to arrest and not pursuant to the amended search warrant. A search incident to arrest is an exception to the warrant requirement, meaning it does not require a valid warrant. *See State v. Salinas*, 169 Wn. App. 210, 216, 279 P.3d 917 (2012). The trial court did not decide whether the search of Torrez's person was supported by the amended search warrant application. On appeal, Torrez does not claim that the search of his person incident to arrest was improper. Regardless of whether the amended search warrant application provided probable cause to search Torrez, the search of his person incident to arrest provides an independent basis for the search.

2. TORREZ'S STATEMENTS TO LAW ENFORCEMENT

Torrez argues that the trial court erred in admitting his statements to Detective Aase because he was subject to custodial interrogation and not advised of his *Miranda* rights. We disagree.

Torrez maintains that Detective Aase's questioning constituted custodial interrogation. However, even if Torrez was in custody at the time of the questioning, the trial court found that Detective Bloomsburg advised Torrez of his *Miranda* rights before Detective Aase questioned him.[5] This finding is supported by substantial evidence.

---

[5] Torrez does not assign error to this finding. *See* RAP 10.3(g). However, since his briefing adequately raises the issue, we exercise our discretion to address whether the finding is supported by substantial evidence. *Bircumshaw v. Wash. State Health Care Auth.*, 194 Wn. App. 176, 380 P.3d 524 (2016).

Detective Aase testified that Detective Bloomsburg informed him he had given the warnings, and when asked, Torrez confirmed that he remembered and understood the warnings. Although, more than three years after the incident, Detective Bloomsburg could not specifically remember giving the warnings, he testified that it was his practice to do so in situations such as this and he would not have told Detective Aase he had given the warnings unless he had.

The trial court did not abuse its discretion in denying Torrez's motion to suppress his statements to law enforcement after finding that Torrez had been advised of his *Miranda* rights.

3. MOTION TO SEVER TRIALS

Torrez argues that the trial court abused its discretion in denying his motion for severance. We disagree.

"The law does not favor separate trials." *State v. Huynh*, 175 Wn. App. 896, 908, 307 P.3d 788 (2013). However, upon motion of a defendant, the trial court shall grant severance if the trial court "determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). The defendant bears the burden of showing severance is necessary. *State v. Emery*, 174 Wn.2d 741, 752, 278 P.3d 653 (2012).

A trial court's denial of a motion to sever is reviewed for an abuse of discretion. *State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). Where a trial court abuses

its discretion in denying a motion to sever, this court will reverse only if the defendant can show that he or she was prejudiced by the decision. *Emery*, 174 Wn.2d at 754-56.

A trial court must consider the following factors to determine whether the potential for prejudice necessitates severance:

> "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial."

*State v. Slater*, 197 Wn.2d 660, 677, 486 P.3d 873 (2021) (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)). The trial court must also weigh prejudice to the defendant against the need for judicial economy. *Id.*

In deciding a motion to sever, a trial court must conduct an analysis of each of the four factors, in addition to the need for judicial economy, on the record. *State v. McCabe*, __ Wn. App. 2d __, 526 P.3d 891, 897 (2013). Even if the trial court abuses its discretion by failing to conduct a proper analysis, the defendant must still show prejudice to be entitled to relief on appeal. *Id.* This court considers the relevant factors to determine whether the denial of the motion to sever resulted in prejudice. *Id.*

Torrez argues that the trial court abused its discretion in denying his motion to sever. The trial court failed to analyze the four factors above. Accordingly, we analyze the factors from the perspective of the trial court to determine whether Torrez can demonstrate prejudice. *See Id.*

18

Regarding the first prong, Torrez maintains that the evidence for the conspiracy charge against him was considerably weaker than the evidence against Jones. Specifically, Torrez argues that the evidence of the controlled buys only pertained to the conspiracy charge against Jones and did not support a finding of guilt for him. As explained below, the evidence of the controlled buys would arguably have been admissible in both Jones and Torrez's trials. But because Jones was the only individual present during the controlled buys, the State's case against her was stronger than it was against Torrez. Thus, there may have been potential for prejudice under this factor. However, the State's case against Torrez was still strong as the evidence showed that he was living at the residence and the sole occupant of the SUV, which he admitted contained methamphetamine.

Second, Torrez contends that he used a different defense than Jones because he maintained he was not a part of the drug operation. But Torrez's defense was not known to the trial court at the time of his motion to sever. Torrez did not proffer his anticipated defense, and there is no indication that Torrez's defense was known to the trial court at the time of the motion to sever. The trial court cannot abuse its discretion based on facts that are not provided. *State v. Bluford*, 188 Wn.2d 298, 310, 393 P.3d 1219 (2017). Regardless, at trial, both Jones and Torrez asserted a general denial defense and attacked the State's evidence as insufficient to convict.

19

Third, although the trial court instructed the jury to consider each count separately, Torrez claims that the instruction could not ameliorate the damage done, essentially arguing that the jury did not follow the instruction. However, absent evidence to the contrary, this court should presume the jury followed the instruction. *See State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015) ("Jurors are presumed to follow the court's instructions.").

Fourth, Torrez argues that if the charges had been severed, the evidence from the controlled buys would have been inadmissible under ER 404(b) at his trial. Torrez fails to adequately explain and support this argument on appeal. *See* RAP 10.3(a)(6); *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We will not address issues raised without proper citation to legal authority."); *State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."), *rev'd on other grounds by* 170 Wn.2d 117, 240 P.3d 143 (2010).

The evidence of the controlled buys was relevant to both the possession of a controlled substance with intent to deliver and the conspiracy charges against Torrez as it tended to show the methamphetamine found at both the residence and in the SUV was possessed by Jones and Torrez with the intent to deliver. *See State v. Thomas*, 68 Wn. App. 268, 273, 843 P.2d 540 (1992) (trial court properly admitted officers' testimony indicating that defendant had appeared to be selling drugs on three different occasions

20

prior to his arrest because evidence logically related to material issue of whether

defendant intended to sell cocaine in his possession when he was arrested).

Finally, Torrez broadly asserts that no amount of judicial economy justified the

prejudice caused to Torrez by denying his motion to sever. However, severance would

have resulted in two trials instead of one. Because the controlled buys, the search of the

residence, and the search of the SUV were all relevant to the charges against both Jones

and Torrez, several, if not all, of the witnesses would have had to testify at both trials,

and their testimony would have been largely duplicative. Accordingly, the need for

judicial economy in this case outweighed any prejudice to Torrez.

Although the trial court failed to conduct a proper analysis before denying

Torrez's motion to sever, Torrez fails to show prejudice from the denial.

4.  SUFFICIENCY OF EVIDENCE

Torrez argues that there was insufficient evidence to support the jury's finding of

guilt for both the possession of a controlled substance with intent to deliver and the

conspiracy to commit possession of a controlled substance with intent to deliver. We

disagree with both arguments.

Sufficiency of the evidence is reviewed de novo. *State v. Rich*, 184 Wn.2d 897,

903, 365 P.3d 746 (2016). Washington follows the standard of review for a challenge to

the sufficiency of the evidence as set out in *Jackson v. Virginia*.[6] *State v. Green*, 94

Wn.2d 216, 221, 616 P.2d 628 (1980). When reviewing a challenge to the sufficiency of

the evidence to prove the elements of an offense, we must determine "whether, after

viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson*, 443 U.S. at 319. The purpose of this standard of review is to ensure that the

fact-finder rationally applied the constitutional standard required by the due process

clause of the Fourteenth Amendment to the United States Constitution, which allows for

conviction of a criminal offense only upon proof beyond a reasonable doubt. *Id.* at 317-

18.

In claiming insufficient evidence, the defendant necessarily admits the truth of the

State's evidence and all reasonable inferences drawn from it. *State v. Salinas*, 119 Wn.2d

192, 201, 829 P.2d 1068 (1992). These inferences "must be drawn in favor of the State

and interpreted most strongly against the defendant." *Id.* Further, we must defer to the

trier of fact to resolve conflicting testimony and evaluate the persuasiveness of the

evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (credibility

determinations cannot be reviewed on appeal). Direct and circumstantial evidence are

weighed equally. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019).

---

[6] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

"[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

With regard to the possession of a controlled substance with intent to deliver conviction, Torrez maintains that the State failed to show that he possessed methamphetamine, and accordingly, there was insufficient evidence to support the jury's verdict.

As the jury was instructed, "Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance." CP at 189. Mere proximity is insufficient to establish possession. The jury must also find the defendant had dominion and control over the substance. The following factors are relevant in determining whether Torrez had dominion and control over the object:

> [W]hether the Defendant had the immediate ability to take actual possession of the substance, whether the Defendant had the capacity to exclude others from possession of the substance, and whether the Defendant had dominion and control over the premises where the substance was located.

CP at 189.

Testimony at trial established that Torrez was stopped while driving the SUV that had just left the residence. He was the sole occupant of the vehicle and admitted that there was a "personal amount" of methamphetamine in the backseat. Law enforcement searched and found about a quarter pound of methamphetamine where he said it would be

located. Torrez was not only close in proximity to the methamphetamine, he also had dominion and control over it as he had the immediate ability to take actual possession of the methamphetamine, had the capacity to exclude others from possessing the methamphetamine, and had dominion and control over the SUV where the methamphetamine was located. Accordingly, there was sufficient evidence to show that Torrez possessed the methamphetamine in the SUV.

Additionally, evidence at trial suggested that Torrez was living at the residence where methamphetamine was found in plain view behind a recliner. Law enforcement found letters addressed to Torrez and male clothing items in a room that appeared to belong to Torrez. Thus, because there was evidence that Torrez was living at the residence, there was also sufficient evidence to show that Torrez had dominion and control over the methamphetamine found therein. *State v. Amezola*, 49 Wn. App. 78, 87, 741 P.2d 1024 (1987) (fact that defendant was residing at premises where substance was found combined with the fact that drugs were not kept out of defendant's presence was sufficient to support finding of constructive possession), *abrogated on other grounds by State v. McDonald*, 138 Wn.2d 680, 981 P.2d 443 (1999).

Turning to the conspiracy charge, Torrez argues that the State failed to present sufficient evidence to show an agreement between Jones and Torrez to possess and sell

methamphetamine or a substantial step to carry out the agreement. The jury instructions

explained that conspiracy to possess a controlled substance with intent to deliver required

proof beyond a reasonable doubt that Torrez agreed "with one or more persons to engage

in or cause the performance of conduct constituting the crime of" possession of a

controlled substance with intent to deliver and that "any one of the persons involved in

the agreement took a substantial step in pursuance of the agreement." CP at 194. "A

substantial step is conduct of the defendant that strongly indicates a criminal purpose."

CP at 195.

Although there was no direct evidence of a conspiracy, the circumstantial evidence

showed that Jones and Torrez were acting in concert. They were both found with a

quarter pound of methamphetamine, and scales, methamphetamine, and packing

materials were found at the residence where they lived. Torrez was also found with about

$5,000 in cash leaving in the same vehicle Jones had used to drive to a controlled buy.

All of this evidence tended to show that Jones and Torrez conspired to sell

methamphetamine. Additionally, the procurement of a large amount of

methamphetamine, whether it was by Jones or Torrez, was a substantial step in carrying

out the conspiracy to sell methamphetamine.

There was sufficient evidence to support the guilty verdicts for both the possession of a controlled substance with intent to deliver and the conspiracy to commit possession of a controlled substance with intent to deliver.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.